UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYNDELLE T. PHILLIPS, ESQ.,<br><br>Plaintiff,<br><br>– against –<br><br>THE CITY OF NEW YORK, COMMISSIONER SALVATORE CASSANO and FIRST DEPUTY COMMISSIONER DANIEL SHACKNAI,<br><br>Defendants. | MEMORANDUM AND ORDER<br><br>15-CV-1795 |

JACK B. WEINSTEIN, Senior United States District Judge

| Parties | Appearances |
|---|---|
| Lyndelle T. Phillips | Gregory G. Smith<br>81 Prospect Street<br>Brooklyn, NY 11201<br>917-748-2623<br>Email: gsmith225@aol.com |
| The City of New York<br><br>**Salvatore J. Cassano**<br>*Commissioner*<br><br>**Daniel Shacknai**<br>*First Deputy Commissioner* | Lawrence J Profeta<br>NYC Corporation Counsel<br>100 Church Street<br>New York, NY 10007<br>212-356-2630<br>Fax: 212-788-0940<br>Email: lprofeta@law.nyc.gov |

1

# Contents

I. Introduction ................................................................................................................. 2
II. Facts ........................................................................................................................... 3
III. Law ............................................................................................................................ 7
    A. Summary Judgment ............................................................................................ 7
    B. Statute of Limitations Under 42 U.S.C. § 1983 and § 1981 ............................... 8
    C. Discriminatory Termination Under 42 U.S.C. § 1981 ........................................ 9
IV. Application of Law to Facts ..................................................................................... 11
    A. Statute of Limitations for 42 U.S.C. § 1983 and § 1981 Claims ....................... 11
    B. Plaintiff's 42 U.S.C. § 1981 Employment Discrimination Claim ..................... 11
        1. Prima Facie Case of Discrimination ............................................................. 11
        2. Defendants' Non-Discriminatory Reasons for Terminating Plaintiff's Employment ................................................................................................. 12
        3. Discriminatory Pretext .................................................................................. 13
V. Conclusion ................................................................................................................ 14

## I. Introduction

Discrimination in the work place is often covert, and can only be revealed through a full examination of the facts. Juries are unusually well suited to making this determination after weighing the evidence and credibility of the parties. In this case, under the court's examination, plaintiff's presentation of herself at the hearing on defendant's motion for summary judgement indicates that a jury could find that she did not fail in administering her duties, and that racial discrimination was the reason for her termination.

Lyndelle T. Phillips is the former head of the New York City Fire Department's ("FDNY") Equal Employment Opportunity ("EEO") Office. Alleging that she was demoted and then fired because of her race, she brings suit against the City of New York, the Fire Commissioner, and the First Deputy Commissioner.

2

Defendants move for summary judgement on all claims. The motion is granted on statute of limitations grounds with respect to the Section 1983 claims.

Based on the paper submissions and arguments by both parties, the court was prepared to grant defendants' motion on the Section 1981 claim. After observing plaintiff during her extended examination by the court, defendants' motion for summary judgment on plaintiff's Section 1981 claim is denied. A jury could find her to be a credible witness who took her job at the FDNY seriously and performed satisfactorily. Discrimination, and not poor job performance, a jury could conclude, was the reason for her termination by the FDNY.

## II. Facts

Plaintiff, an African-American female, was appointed on June 5, 2006 Assistant Commissioner for EEO at the FDNY. Defendant Rule 56.1 Statement ("Def. 56.1 Stm't"), ECF No. 98 ¶ 1. She did not have a permanent civil service title, but was placed in a provisional capacity. *Id.* ¶ 54. For the first three years of her tenure (2006-2009), she reported to FDNY Commissioner Scoppetta, and, for the final year (2009-2010), to FDNY Commissioner Cassano. Plaintiff Response to Def. R. 56.1. Stm't ("Pl. Resp. to Def. R. 56.1. Stm't"), ECF No. 102 ¶ 54.

She was responsible for managing the operations and administration of the FDNY EEO Office, including managing staff, conducting training, establishing policy manuals, and responding to reporting requirements. *Id.* ¶ 2. In December 2009, the Deputy Commissioner for Citywide EEO for the New York City Department of Citywide Administrative Services ("DCAS") notified the FDNY Deputy Commissioner of Legal Affairs that she was concerned about an excessive backlog of cases that had been pending for more than 90 days in the FDNY EEO Office. *Id.* ¶¶ 3-4. The FDNY EEO Office had the largest backlog of EEO cases of any City agency. *Id.*; *see also* Pl. Resp. to Def. R. 56.1. Stm't ¶ 8 (explaining that plaintiff had

3

inherited part of the backlog from her predecessor). After discussing the matter with Commissioner Scoppetta, in 2010 plaintiff was able to substantially reduce aged cases, from 247 to some 50. Def. 56.1 Stm't ¶¶ 7-8.

In the summer of 2010, two attorney investigators in the FDNY EEO office complained of discrimination and retaliation by plaintiff. *Id.* ¶ 9. An EEO Officer for the New York City Law Department ("Law Department Officer") investigated, finding that there was no probable cause to believe that plaintiff had discriminated against the complainants. *Id.* ¶ 12. The "Corporation Counsel Report" written by the Law Department Officer concluded, however, that plaintiff had failed to effectively respond to complaints brought by other staff members against plaintiff's Deputy Director, causing "a rift among the staff, the loss of trust in the leadership of plaintiff and [her Deputy Director], and a resulting negative impact on [FDNY] EEO Office operations and morale." *Id.* ¶¶ 12-18.

In early 2011, Commissioner Cassano met with New York City Corporation Counsel Cardozo ("Cardozo") to discuss the Corporation Counsel Report. *Id.* ¶ 19. During the meeting, Cardozo expressed "deep concerns about the functioning of the FDNY's EEO Office and the ineffectiveness of its current management," as well as a belief that "changes needed to be made in the management of the EEO unit." *Id.* Commissioner Cassano states that based on the Corporation Counsel Report; discord amongst the FDNY EEO staff evidenced in multiple complaints and the report itself; and a "lack of managerial effectiveness as demonstrated by, among other things, the significant backlog of aged cases" plaintiff was replaced. *Id.* ¶ 21.

On March 24, 2011, Commissioner Cassano informed plaintiff that she would be replaced as Assistant Commissioner, but would be afforded time to complete assignments and

pursue other employment; a vacancy notice was posted for the position of Assistant Commissioner for FDNY EEO on the same day. *Id.* ¶¶ 22-23.

On July 20, 2011, Commissioner Cassano selected Margo Ferrandino ("Ferrandino"), an African-American female, to fill the Assistant Commissioner for EEO position. *Id.* ¶ 26. When Ferrandino assumed her role as Assistant Commissioner of EEO on October 21, 2011, plaintiff was reassigned to the FDNY Bureau of Legal Affairs. *Id.* ¶ 33. She continued to receive her full former salary and benefits. *Id.*

Plaintiff contends that she was transferred to the FDNY Bureau of Legal Affairs and *permanently* reassigned as a staff attorney to work on general litigation matters. Pl. Resp. to Def. R. 56.1. Stm't ¶ 33. Defendants claim that this reassignment was temporary. Def. 56.1. Stm't ¶ 33.

In October 2011, plaintiff, through her counsel, corresponded with the New York City Law Department in an effort to secure a position with another City agency. Def. 56.1 Stm't ¶¶ 34-37. During the approximate one year in which she was assigned to the FDNY Bureau of Legal Affairs, plaintiff was interviewed for the Directorship of Equal Opportunity at the Parks Department but did not obtain the position. *Id.* Plaintiff's counsel and the Law Department also discussed the possibility of her moving to the Department of Education. *Id.* On March 26, 2012, when it became clear that plaintiff did not intend to resign from her position at the FDNY Bureau of Legal Affairs, the Deputy Commissioner of Administration Douglas White and the Assistant Commissioner of Human Resources Donay Queenan met with plaintiff to inform her that her employment with the FDNY would be terminated effective April 6, 2012. *Id.* ¶ 38.

Plaintiff describes her own performance as Assistant Commissioner of the EEO as "competent," noting that she never received a performance evaluation during her six years of

5

employment. Pl. Resp. to Def. R. 56.1. Stm't ¶ 2; *see also* Affidavit of John Coombs, ECF No. 106 ¶ 3 (describing plaintiff as "competent, organized and a good manager").

During her tenure as Assistant Commissioner, the FDNY was involved in an extensive Title VII litigation ("*Vulcans*") which found the FDNY's hiring practices for firefighters to be discriminatory. *United States v. City of New York*, 683 F. Supp. 2d 225, 233 (E.D.N.Y. 2010), *vacated*, 717 F.3d 72 (2d Cir. 2013). While the district court's holding that the Fire Department's use of written examinations constituted a pattern and practice of intentional discrimination was eventually overturned by the Court of Appeals for the Second Circuit (*see* 717 F.3d at 77), the pervasive atmosphere of discriminatory animus described during the *Vulcans* litigation, confirmed by the extensive factual conclusions of the district court, loom over plaintiff's allegations. *See, e.g.*, 683 F. Supp. 2d at 261 ("The City's willingness to treat black applicants differently—to tolerate adverse outcomes against one race that it would not tolerate against another—is, if not the textbook definition of discriminatory intent, its nearly indistinguishable synonym."). *Vulcans* attracted much media attention. *See, e.g.*, Andy Newman, *Justice Dept. Sues New York City, Citing Bias in Hiring Firefighters*, N.Y. Times, May 22, 2007 B1.

Plaintiff testified in the *Vulcans* case on August 8, 2011, revealing that the FDNY EEO Office had had a reduction in the number of attorneys on its staff. Def. 56.1 Stm't ¶¶ 44-45. The court in *Vulcans* issued a Remedial Order on December 8, 2011, requiring, among other things, "the City to retain an independent EEO consultant, who would submit a report on the EEO compliance activities, identify all tasks the Fire Department EEO Office ought to be performing, recommend a detailed compliance program to be carried out by the Fire Department

6

EEO Office, and recommend process, organizational and policy changes that need to take place to ensure compliance with applicable Federal, State and City EEO laws and policies." *Id.* ¶ 46.

Following this remedial order, Professor Merrick T. Rossein was retained by the City as an independent FDNY EEO consultant. *Id.* ¶ 47. On March 23, 2012—three days prior to plaintiff's notification that her employment would be terminated—plaintiff met with Professor Rossein, at his request. *Id.* ¶ 48.

Plaintiff filed this lawsuit on April 2, 2015 claiming violations of 42 U.S.C § 1983 and 42 U.S.C § 1981, alleging First Amendment retaliation, violations of the Fourteenth Amendment, and discharge based on race.

### III. Law

#### A. Summary Judgment

Summary judgement is appropriate when, "after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact." *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). The non-moving party must provide "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation omitted).

Summary disposition—at both the motion to dismiss and summary judgment stages—has become increasingly common. *Cf.* Alexander A. Reinert, *Measuring the Impact of Plausibility Pleading*, 101 Va. L. Rev. 2117, 2143 (2015) (find a 15% increase in the grant rate of motions to dismiss from 2006 to 2010—the seminal cases *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) were decided respectively in 2007 and 2009). The Supreme Court of the United States has directed district courts to actively engage with cases at early procedural stages using their "judicial experience and common sense." *Iqbal*, 556 U.S. at

679; *cf.* Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

It is this court's practice—and has been for some years—to provide parties an opportunity to be heard early in a litigation. *See* Arthur R. Miller, *Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure*, 88 N.Y.U. L. Rev. 286, 344 n.214 (2013) (noting this court's approach of meeting with the parties before ruling on a motion to dismiss in order to get "a sense of the litigation"). When a dispositive motion is filed, the court requires the parties and their attorneys to appear for a hearing. *E.g.*, Oct. 27, 2017 Order, ECF No. 118 ("Plaintiff and a person with knowledge of the facts from the Defendants shall be present in person at the hearing."). These hearings, a mixture of attorney argument and witness testimony, allow the court to assess the case early in the litigation and provides litigants with a chance to articulate their position in the lawsuit in a way relying on the papers and arguments of counsel alone cannot achieve. This also reassures the parties that it is the court itself that is deciding the case after listening to them.

### B. Statute of Limitations Under 42 U.S.C. § 1983 and § 1981

The three-year statute of limitations of New York CPLR 214(5), which governs general personal injury actions, is applicable to Section 1983 cases filed in New York. *Owens v. Okure*, 488 U.S. 235, 251 (1989). Although the State statute of limitations applies, the issue of when the "cause of action accrued remains a question of federal law." *Leonhard v. United States*, 633 F.2d 599, 613 (2d Cir. 1980). Claims under Section 1981, unlike Section 1983 claims, are governed by the federal catchall four-year statute of limitations of 28 U.S.C. § 1658. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004).

In employment discrimination cases, a federal claim accrues "the date the allegedly discriminatory decision was made and communicated to the employee." *Economu v. Borg-Warner Corp.*, 829 F.2d 311, 315 (2d Cir. 1987) (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 258) (internal quotation and alterations omitted); *Flaherty v. Metromail Corp.*, 235 F.3d 133, 137–38 (2d Cir. 2000) ("[T]he limitations period begins to run on the date that the employer gives definite notice of [the] decision to [terminate] the employee."). This principle, originally developed in cases where employees file claims under Title VII, applies in cases under Section 1983. *See Delaney v. Farley*, 623 F. App'x 14, 16 (2d Cir. 2015) (holding that the statute of limitations on the plaintiff's Section 1983 employment discrimination claim began to run when he received notice of his termination).

### C. Discriminatory Termination Under 42 U.S.C. § 1981

Enacted as part of the Civil Rights Act of 1866, 42 U.S.C. § 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

It is settled in the Second Circuit that at-will employment is a "contractual relationship within the meaning of § 1981." *Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 261 (2d Cir. 2000). Under Section 1981, a plaintiff may sue for discriminatory discharge. *Id.* at 264. "The substantive standards for employment discrimination claims under §§ 1981 and 1983 mirror those for claims under Title VII." *Morales v. Rooney*, 509 F. App'x 9, 10 (2d Cir. 2013).

The *McDonnell Douglas* analytical framework first developed in Title VII cases applies. *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) ("[Plaintiff's]

disparate treatment claims under Title VII, § 1981, and § 1983 are subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*.").

A plaintiff must first establish a prima facie case of discrimination by showing: "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the action occurred under circumstances giving rise to an inference of discrimination." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). This prima facie case creates a presumption of discrimination, which is rebuttable if the defendant can articulate a legitimate, nondiscriminatory reason for the unfavorable employment decision. *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002). If the defendant can proffer this reason, to survive summary judgment the plaintiff must "point to evidence that reasonably supports a finding of prohibited discrimination." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000)).

When there is no direct evidence of discriminatory animus, one method a plaintiff may use in establishing an inference of discrimination is to point to comparable employees of a different race who were treated differently. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001). An inference of discriminatory intent can also be drawn in several other ways including, "the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (internal citation omitted).

10

IV. Application of Law to Facts

A. Statute of Limitations for 42 U.S.C. § 1983 and § 1981 Claims

Plaintiff brings two separate causes of action under 42 U.S.C. § 1983: (1) violation of her First Amendment rights because she was terminated (in retaliation) for speech critical of the FDNY and (2) a violation of her 14th Amendment rights because she was allegedly fired because of her race. *See* Plaintiff Opposition to Motion for Summary Judgment ("Pl. Opp'n"), ECF No. 108 at 1. Plaintiff also brings a cause of action under 42 U.S.C. § 1981, arguing that her Constitutional "right to make and enforce contracts" was violated when she was terminated because of her race. *See id.* at 7-8.

The three-year statute of limitations of New York CPLR 214(5) applies to all Section 1983 actions filed in New York, with the claim accruing on the date the discriminatory decision was communicated to the employee. *See Owens*, 488 U.S. at 251; *Economu*, 829 F.2d at 315. Here, both of plaintiff's Section 1983 causes of action are based on her March 26, 2012 notice of termination. Time to file suit expired on March 26, 2015. *See* 56.1 Stm't ¶ 42. Because plaintiff filed the current action on April 2, 2015, her Section 1983 claims are untimely. *See* Complaint, ECF No. 1.

Plaintiff's Section 1981 discriminatory discharge claim is governed by the federal four-year statute of limitations, and is also based on the March 26, 2012 notice of termination. It is actionable. *See Jones*, 541 U.S. at 371.

B. Plaintiff's 42 U.S.C. § 1981 Employment Discrimination Claim

1. Prima Facie Case of Discrimination

To establish a prima facie case of Section 1981 employment discrimination, a plaintiff must prove that "(1) she is a member of a protected class, (2) she was qualified for her position,

11

(3) she suffered an adverse employment action, and (4) the action occurred under circumstances giving rise to an inference of discrimination." *Norville*, 196 F.3d 89, 95. Here, the first three elements do not appear to be in dispute and the fourth is discussed below. *See Infra* Section IV(B)(2).

### 2. Defendants' Non-Discriminatory Reasons for Terminating Plaintiff's Employment

Once a plaintiff has established a prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for the unfavorable employment decision. *Mario*, 313 F.3d 758, 767. In response to plaintiff's argument that she was discriminated against and terminated because of her race, defendants first note that Ferrandino, plaintiff's replacement, is an African American female attorney. *See* Defendant Memorandum in Support of Motion for Summary Judgment ("Def. Mem."), ECF No. 99 at 8.

Defendants assert that the FDNY had ample non-discriminatory reasons for terminating plaintiff's employment, given her consistent struggle with management during her tenure as Assistant Commissioner. In particular, defendants point to the 2009 DCAS notification of a significant case backlog, the two discrimination complaints lodged against plaintiff by attorneys in the EEO office in 2010, and the findings of the "Corporation Counsel Report" written by the Law Department Office. *See id.* at 8-10.

After the decision to replace plaintiff, she was reassigned to the FDNY Legal Affairs, where she continued to receive her full salary and benefits and the New York City Law Department tried to find another EEO position for plaintiff. *See id.* When it became clear that she did not intend to resign, the FDNY claims it fired her for reasons of inadequate performance. *See id.* at 11.

12

### 3. Discriminatory Pretext

Once a non-discriminatory reason is articulated, the viability of plaintiff's Section 1981 claim rises of falls on her ability under the third step of the *McDonald Douglass* framework, to "point to evidence that reasonably supports a finding of prohibited discrimination." *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002).

Plaintiff devotes a significant portion of her written submissions to an attempt to establish an inference of discrimination by pointing to comparable employees of a different race who were treated differently. *See* Pl. Opp'n at 9-14. The court was prepared to rule—based on the parties' briefs—that plaintiff had failed to establish an inference of discrimination.

There are factual dissimilarities between plaintiff and the comparators to which she points—different job titles, different direct supervisors, and a general lack of evidence that plaintiff's own performance evaluation and discipline standards were substantially similar to those of her comparators. For a person in a senior management position proving discrimination by using comparators is difficult. Managers often do not receive formal evaluations and are the only person with their precise job title. *See generally* Suzanne B. Goldberg, *Discrimination by Comparison*, 120 Yale L.J. 728 (2011) (noting the general difficulties with the comparator approach to discrimination and in particular the difficulties for "uniquely situated employees").

The December 18, 2017 hearing changed the court's view of the case. Plaintiff was subject to thorough examination by the court. It was clear that a jury could find her a credible witness with a legitimate claim of discrimination. She cogently and persuasively stated several reasons—in addition to the differing treatment of comparators—why a jury could find that there was race based discrimination. She was a thoughtful person, who appears to have taken her job

13

at the FDNY EEO office seriously. It would be hard for a jury to believe that this intelligent, well informed person managed her important office in a lackadaisical manor.

The timing of plaintiff's termination from the FDNY on March 26, 2012—three days after she met with consultant Professor Rossein to discuss race discrimination at the FDNY—is, a jury could find, not mere coincidence. *See* December 18, 2017 Hearing Transcript ("Hr'g Tr.") 13:17-22. After plaintiff disclosed to Professor Rossein that race discrimination in the FDNY was broader than revealed in the *Vulcans* litigation, she was terminated. Hr'g Tr. 13:23-25.

There was, as noted in the *Vulcans* findings of fact, an atmosphere of racial tension and animus within the FDNY. Plaintiff's status as a black female Assistant Commissioner at the FDNY, and the particular scrutiny with which the FDNY approached plaintiff's alleged mismanagement, raises a genuine issue of triable fact as to whether the defendants terminated plaintiff because of her race. *See* Hr'g Tr. 26:6-10 ("The City Law Department investigated. They said there was no probable cause to believe that you [were] discriminated [against] in this case; however, they went on to access management issues for me, but not for Kay Ellis, not for Rob Wallace, not for Michele Maglione.").

The evidence is sufficient to raise a genuine triable issue for trial. A jury could conclude that the plaintiff's claim of discrimination is credible, and that the defendants reason for her termination was pretextual.

## V. Conclusion

Defendants' motion for summary judgment is granted on plaintiff's Section 1983 claim on the basis of the statute of limitations. Defendants' motion for summary judgment on plaintiff's Section 1981 claim for discriminatory termination is denied.

14

Trial shall commence on February 5, 2018 in Courtroom 10 B South at 10:30 a.m.

A hearing on motions *in limine* and all other pre-trial issues, including whether the issues should be narrowed for trial, shall be held on January 29, 2018, at 10:30 a.m. in Courtroom 10 B South. Plaintiff and individual defendants shall be present with counsel.

The parties shall exchange and file with the court by January 22, 2018, the following: (1) motions *in limine*; (2) lists of pre-marked exhibits proposed for use at the trial, together with copies of the exhibits, and any stipulations regarding admissibility and authenticity; (3) lists of proposed witnesses together with brief summaries of their proposed testimony; (4) stipulations with respect to undisputed facts; and (5) a full proposed charge to the jury with findings of fact.

The parties shall agree on a briefing schedule. If they cannot agree, all scheduling issues are respectfully referred to the magistrate judge.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: December 27, 2017
Brooklyn, New York